# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

JUDY K. BENNETTE     CIVIL ACTION NO. 07-2151

VS.     JUDGE DOHERTY

MICHAEL J. ASTRUE, COMMISSIONER     MAGISTRATE JUDGE METHVIN
OF SOCIAL SECURITY

## *REPORT AND RECOMMENDATION*

Before the undersigned is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Judy K. Bennette filed applications for disability and supplemental security income disability benefits on March 22, 2005, alleging a disability onset date of December 31, 2002. (R12). Bennette was born on September 7, 1960, and was 42 years old on her alleged disability onset date. She was 46 years old on the date of the ALJ's Decision on June 26, 2007. (Tr. 19). Bennette has an eighth grade education, and past relevant work as an interior auto detailer, cashier, and fast food cook. (Tr.16, 19).

In her application, Bennette alleged disability due to arthritis, anxiety/panic attacks, and breathing difficulties, and described her impairments as follows:

> I suffer with arthritis throughout my body but mostly in the lower back and legs - especially on the right side of my body. I am scheduled to have surgery in April 205 [sic] for a total hysterectomy with the removal of both ovaries. I am being rtreated [sic] for anxiety and depression. I have hard time breathing and have frequent bronchitis. I am too nervous to work and have panic attacks when I get upset, nervous or have too much pressure on me. My condition has worsened over the last few years. I felt I was totally disabled when I filed the first claim but feel that I am worse now than before. (Tr. 89, 90).

At the first step of the analysis, the ALJ found Bennette had not engaged in substantial gainful employment since the alleged onset of disability. (Tr. 14). At the second step, the ALJ found Bennette had severe impairments of congestive heart failure, hypertension, Graves' disease, and anxiety. (Tr. 14). After finding no listed impairment was met at the third step, the ALJ assigned a residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except being exposed to wetness, humidity, temperature extremes, fumes, odors, dusts, gases and poor ventilation. She is limited to simple, (1 to 2) step tasks. She is precluded from any interaction with the public and only occasional interaction with supervisors and coworkers. She can maintain attention and concentration for 2-hour periods. (Tr. 16).

The ALJ found at the fourth step that Bennette could not perform her past relevant work as an interior automobile detailer, cashier, and fast food cook. (Tr. 19). At the fifth step, after questioning a vocational expert, the ALJ found that there were significant jobs available in the national economy which Bennette could perform, including order clerk, information clerk, and general office clerk. Accordingly, the ALJ concluded that Bennette was not disabled under the provisions of the Social Security Act at any time from December 31, 2002, to the date of the decision on June 26, 2007. (Tr. 19, 20). This appeal followed.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

### *Assignment of Errors*

In her assignment of errors, Bennette contends that the ALJ failed to follow Social Security policy pertaining to erosion of the sedentary work base, specifically SSR 96-9p. Bennette further appears to argue that the ALJ's residual functional capacity is not supported by substantial evidence of record, and that the ALJ erred in finding Bennette could maintain work activity on a continuing or sustained basis.

### *Applicable Law and Discussion*

SSR 96-9p defines sedentary work as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like

docket files, ledgers, and small tools. Although a sedentary job is defined as one
that involves sitting, a certain amount of walking and standing is often necessary
in carrying out job duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met. "Occasionally" means occurring
from very little up to one-third of the time, and would generally total no more than
about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of
an 8-hour workday. Unskilled sedentary work also involves other activities,
classified as "nonexertional," such as capacities for seeing, manipulation, and
understanding, remembering, and carrying out simple instructions.[1]

The Ruling also observes that "'sedentary work' represents a significantly restricted range of work," and that "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p. Furthermore, if an individual has additional exertional or nonexertional impairments which significantly erode the occupational base, a finding of "disabled" usually applies. SSR 96-9p states in pertinent part:

> . . . [S]ince each occupation administratively noticed by Table No. 1 represents
> numerous jobs, the ability to do even a *limited* range of sedentary work does not in
> itself establish disability in all individuals, although a finding of "disabled"
> usually applies when the full range of sedentary work is significantly eroded . . . .

At the hearing, the ALJ questioned the vocational expert regarding job availability with Bennette's eroded sedentary work range, as follows:

> A. Okay. Thank you. If we assume a Claimant from 42 to 46 years of age
> with eight years of education with the exertional ability to perform
> sedentary work with the following limitations. The ability to lift and carry
> ten pounds occasionally, less than ten pounds frequently. Stand or walk
> two hours out of eight, but not continuously. Sit six hours out of eight.
> Pushing and pulling would be limited by the ability to lift and carry.
> Posturals would be occasional. There would be no exposure to wetness or
> humidity, temperature extremes or fumes, odors, dust, gases, poor
> ventilation, et cetera. This person would be limited to simple one or two-
> step tasks with no interaction with the public. And occasional interaction
> with supervision and co-workers. This person would be able to maintain
> concentration and persistence and pace for two hour periods of time, you

---

[1] SSR 96-9p.

know, with appropriate breaks during the day. Would that individual be able to perform any of this Claimant's prior relevant work?

A. No, ma'am.

Q. Okay. Would there be other jobs in the economy that that individual would be able to perform?

A. Okay. Well, we have an individual with an eighth grade education with no sedentary work history, but there are entry-level sedentary jobs that a person such as this could do. And keeping them out of the public. A person could – the numbers are not going to be really high because they can't do some things such as receptionist or information clerks. Are we talking about away from the public even in – by telephone or just in the public personally?

Q. No, I think just personally. She indicates that she was able to converse, you know, on the phone. So let's assume that this person would be able to talk on the phone to somebody.

A. Okay. And then a person such as that could be an order clerk...

\* \* \*

A. 014. And as I indicated that's a – the number is low. It's 19, 000 for the United States and for Louisiana it's just 150, but let me give you a similar one. She could work as an information clerk . . . For the United States is 102,000 and for Louisiana 1150. A person such as that could work as a general office clerk . . . For the United States 66,000 and for Louisiana, general office clerk, 800.

Q. Okay. Now if we assume that the person would not be able to talk on the phone to the public what jobs would be available?

A. Those would not be available. Then you're looking at something like assembly where they're, all they're doing is production of some sort of sedentary. It could be wrapping silverware or tying fishing lures together, but where they're working with things, not people. And so assembly would be the only job that I would be able to identify with that, sedentary with an SVP of 2, 726.687.030. A total number for the United States 62,000 and for Louisiana the total number is 620.

Q. Okay. Now if we modify the hypothetical to say that this person would be unable to maintain work activity for eight hours a day, five days a week on a continuing or sustained basis due to the effects of congestive heart failure and anxiety and depression, would there be any jobs?

A. No, ma'am.

In her decision, the ALJ found that Bennette had severe impairments of congestive heart failure, hypertension, Graves' disease, and anxiety. (Tr. 14). The ALJ also noted that Bennette's combined impairments eroded the sedentary work base, limiting the number and types of jobs Bennette could perform (Rec. 20). The questioning of the VE by the ALJ, as quoted above, shows that there is only one type of job available to Bennette given her exertional and nonexertional impairments: assembly worker. However the performance of that job assumes that Bennette can work eight hours a day, five days a week, in a realistic work setting, despite her congestive heart failure, hypertension, Graves' disease, and anxiety. The ALJ's implicit finding that Bennette was capable of such sustained work is not supported by substantial evidence. The record shows that Bennette requires continuing, frequent medical treatment for her multiple health problems. A cursory review of the record shows well over 18 medical examinations and appointments and multiple emergency room visits in 2005 alone, which is incompatible with an ability to maintain work activity for eight hours a day, five days a week on a continuing or sustained basis, even if Bennette could somehow obtain employment as an assembly worker.

According to SSR 96-9p, although not preclusive, a significant erosion of the sedentary work range *usually* results in a finding of disability. Here, there is no substantial support for the ALJ's finding that Bennette, unlike most individuals capable of only performing a limited range of sedentary jobs, is not disabled.

Bennette was almost 47 years old at the date of the hearing, and she has only an eighth grade education. The undersigned notes if Bennette would have been three years older, 50, at the date of the hearing, the rules and guidelines in appendix 2 would have required a conclusion of

disabled, even if she could have performed the *full range* of sedentary work, which she could not. Also, individuals who are age 45 - 49, who are illiterate in English, and who are limited to even a full range of sedentary work, must be found disabled.[2] While Bennette is not illiterate, she has only an eighth grade education, and does not enjoy a full range of sedentary work, but only a significantly eroded sedentary work range.

Furthermore, the record shows that the ALJ failed to consider all of Bennette's impairments. In a disability analysis, the Commissioner unquestionably must consider all potential impairments. See generally 20 C.F.R. § 404.1523; Loza v. Apfel, 219 F.3d 378, 393 (5th Cir.2000); Crowley v. Apfel, 197 F.3d 194, 197 (5th Cir.1999). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C.A. § 423(d)(3). Therefore, at the early stage of the sequential analysis, the ALJ must decide whether an alleged impairment is an impairment at all within the specialized meaning of that term. If not, there is no error in failing thereafter to mention or analyze it further. Domingue v. Barnhart, 388 F.3d 462, 463 (5th Cir.2004).

As stated above, claimant asserted three impairments in her application for disability benefits: arthritis, anxiety/panic attacks, and breathing difficulties. (R 89). In her decision, the ALJ found claimant had severe impairments of congestive heart failure, hypertension, Graves' disease, and anxiety. (R14). However, the ALJ did not consider Bennette's alleged arthritis. It is well-settled in the Fifth Circuit that an ALJ must consider the cumulative effects of all of an applicant's impairments. In Loza v. Apfel, the court noted:

---

[2]*See* SSR 96-9p, "Policy Interpretation" and FN3.

> The law of this Circuit requires consideration of the combined effect of impairments: "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.' "

Id., 219 F.3d 378, 393 & 399 (5th Cir. 2000)(internal citations omitted).

A radiology report on February 8, 2007, reads in pertinent part as follows:

- There is mild dehydration of the lumbosacral disk space.
- L1-L2: Canal neural foramina pain.
- L4-L5: Facette hypertrophy. No disk herniation or foraminal stenonis.
- L5-S1: Central canal in patent. Bilateral facette hypertrophy. Neural foramen are patent.
- Impression: Mild posterior element hypertrophy of the lower lumbar segments. No disk herniation, central canal or asymmetric foraminal stenosis.

(R437).

The record reflects that claimant regularly was prescribed and took medications for low back pain, including Ultram, Ultracet, and Naprosyn. (Rec. 489, 486, 476, 465, 444, 441, 432, 424, 418, 403, 288, 199, 187, 144, 129).

The medical record contains substantial evidence supporting Bennette's complaints of arthritis and low back pain. The ALJ failed to include Bennette's arthritis among her medically determinable impairments, and, for the reasons discussed below, this failure was not harmless error.

First, apparently as a result of the failure to recognize claimant's arthritis as a medically determinable impairment, no consideration of severity at the second step of the sequential analysis was made. Considering the treatment received and the pain medications prescribed and taken, substantial evidence supports a finding that the impairment was severe under the standard

set forth in Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), and should have been considered in assessing the claimant's residual functional capacity.[3]

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity, and he must explain his decision. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). However, the claimant's arthritis does not appear to have been given serious consideration by the ALJ in assessing claimant's credibility regarding her pain, limitations, and residual functional capacity.

In assessing credibility, the ALJ focused on claimant's lack of medical treatment for her mental impairments, her failure to quit smoking despite her cardiac impairment, and Dr. Greenway's psychological evaluation "suggestive of malingering and attempting to misrepresent her true mental condition" in determining that claimant's allegations were not supported by the record, and not fully credible (R18). The ALJ did state in the decision that Dr. Dawson, a consultative examiner, "reported that the claimant had no limitations on lifting/carrying, standing/walking or sitting." (R19, 412).[4] However, this lone statement, and a recounting of claimant's testimony at the hearing that "[s]he has arthritis in her low back,"[5] does not support a

---

[3] In Stone, the Fifth Circuit held that "an impairment can be considered as *not severe* only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (Internal citations omitted). See also Loza v. Apfel, 219 F.3d 378 (5th Cir. 2000).

[4] Dr. Dawson's consultative examination for DDS was performed on January 25, 2007, and his report was issued January 29, 2007, **after** the administrative hearing on December 4, 2006. His report does not indicate that he was aware of claimant's alleged arthritis or any treatment for same. Interestingly, his understanding of the claimant's alleged impairments, as reflected in his report, was that she was applying for disability due to "hypertension, congestive heart failure, coronary artery disease and hyperthyroidisim" – virtually mirroring the ALJ's findings regarding claimant's physical impairments. (Rec. 411).

[5] Rec. 17.

11

finding that the ALJ considered, *even if to disregard*, any functional limitations, including pain, that might reasonably be expected to result from claimant's arthritis.

Finally, there is no indication that the ALJ considered the Bennette's obesity as a factor affecting her residual functional capacity and its effect on her ability to maintain and sustain employment.[6]

For the foregoing reasons, the it is **RECOMMENDED** that the Commissioner's decision be **REVERSED**, and that Bennette be awarded benefits consistent with an onset date of December 31, 2002.

*Recommendation*

For all of the reasons given above,

**IT IS RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that Bennette be awarded disability benefits consistent with an onset date on December 31, 2002.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

---

[6] See SSR 02-1p  According to the National Institutes of Heath Body Mass Index Table, Bennette's body mass index ranged from approximately 38 at the time her disability application to approximately 33 at the time of the evaluation by Dr. Dawson on 1/29/2007. See National Institutes of Health, National Heart Lung and Blood Institute, Body Mass Index Table. http://www.nhlbi.nih.gov/guidelines/obesity/bmi_tbl.htm (accessed March 9, 2009). Dr. Dawson also noted that she was obese. (Tr.412).

**days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 10, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)